## Young *v.* Bride & Tr.

A justice of the peace throughout the State has jurisdiction to hear and determine a civil action in any county in the State.

A justice of the peace adjudged that a trustee was chargeable in an action brought before him, upon evidence of his liability, no disclosure having been taken, and the case was carried by appeal to the court of common pleas. *Held*, that the question of the liability of the trustee might there be tried by the jury.

Assumpsit. The action was brought before a magistrate, from whose judgment the defendant appealed to the court of common pleas.

The magistrate before whom the action was brought, was a justice of the peace throughout the State. At the date of his commission, and at the time of the trial before him, he was an inhabitant of the county of Rockingham, but the action was commenced and tried in this county.

The plaintiff moved the court that the question of the liability of the trustee, be tried by the jury.

To this the trustee objected, upon the ground that the statute does not authorize that mode of trial in a case commenced before a magistrate. The judgment of the magistrate against this trustee was not rendered upon disclosure of the trustee, but upon evidence *aliunde* alone.

At this term, also, the trustee moved the court to dismiss the action, upon the ground that the magistrate, being a justice of the peace throughout the State, has no jurisdiction to hear and determine civil causes.

*Wiggins*, for the plaintiff.

The trustee is the only party appellant in this case, as will appear by the copies of the record, and the case made should be amended so as to correspond with this fact.

The first question in the case seems to be this: What is the jurisdiction of justices of the peace throughout the State—can they entertain and try civil causes?

There are three grades or classes of justices of the peace recognized by the statute, viz: justices of the peace, justices of the peace and quorum, and justices of the peace throughout the State.

I. The jurisdiction of a justice of the peace is established in civil causes by chap. 175 § 1 Rev. Stat.—in criminal matters by chap. 222 § 1 Rev. Stat. In various other statutes other powers are given to them, in relation to particular offences, such as binding over persons charged with crimes they cannot try, in relation to police offences, &c. &c.

II. Justices of the peace and quorum are authorized by the Revised Statutes to administer official oaths, (chap. 15 § 7) to consider and determine applications of poor debtors to be admitted to take the poor debtor's oath, (chap. 200 § 1) to approve prison bonds, (chap. 199 § 2) and to try certain questions of fraud, concealment of property, &c., where a debtor has been arrested upon a writ, &c., (chap. 185 § 9.)

III. Justices of the peace throughout the State, by chap. 222 §§ 17, 18, Rev. Stat., are authorized, in certain *criminal* matters, to do certain things therein specified. ·

This last class of justices is recognized in the constitution, art. 93, but it is not mentioned any where else in the statutes, although it is a very old and honorable office in this State.

Now it is certain that the only difference between justices of the peace and justices of the peace and quorum, consists in the particular instances where the authority of the latter is enlarged by the statutes cited above. Their powers and duties in all other respects are the same ; the nature and tenure of their office are the same ; they may act in all cases in the county for which they are appointed, where justices of the peace in the same county may act.

Justices of the peace are appointed justices of the peace and of the quorum. The appointment is a promotion, and confers greater power. The lesser office is merged in the greater one, and the higher commission is the only one ever afterwards renewed.

Justices of the peace throughout the State are magistrates of a still higher grade—offices only conferred upon judges of the courts and other notable persons. They are justices of the peace, and generally have the same jurisdiction in any county in the State that justices of the peace have in the county in and for which they were appointed, with particular additional powers given them in certain criminal cases by Rev. Stat. chap. 222 §§ 17, 18.

A person appointed and qualified as a justice of the peace throughout the State, is, by virtue of that appointment, a justice of the peace in and for the county in which he lives. Two commissions as justice of the peace cannot subsist at once as to the same person ; the higher commission would supersede the inferior one. Many persons who are continually acting as magistrates, both in civil and criminal matters, in the different counties where they reside,

hold only commissions as justices of the peace throughout the State. Such has been the common practice throughout the State, and such seems to have been the understanding of the executives and their councils of the State, many of whom were persons learned in the law, for a great many years, of the nature and character of this class of justices. Their practice has been only to renew the highest commission.

If justices of the peace throughout the State can act in the county where they live, they can act in any county in the State. Mere residence does not clothe them with any judicial power; if they are magistrates in the county where they live, their power and authority are derived from their commissions, and their commissions do not appoint them justices of the peace in the county where they live, nor in any one county, but throughout the State. Our ground then is, that a justice of the peace throughout the State may go into any county and there entertain and try causes the same as justices of the peace for the same county may entertain and try them. Is not this a reasonable construction of the powers and duties of this office? Who can it injure if it is sustained by the court? On the other hand, any other construction would do great mischief to many innocent persons, who have been parties to proceedings before magistrates acting only under this kind of commission.

Sections 17 and 18, chap. 222, Rev. Stat., do not limit the authority of this class of magistrates; they do not prescribe their whole power. These statutes give them power to bring offenders from the county in which they have committed their offences, or from any other county where they may be arrested, into the county where such magistrate resides, and there examine them, or to order them carried before some justice in the county where the offence was committed. This is not a limitation, but it is an increase of their power, in the view we have taken of the matter. We

say they may lawfully do in any county, being in the county at the time, anything that justices of the peace in the same county may lawfully do, in both civil and criminal matters. These statutes confer additional powers in certain cases, to be exercised throughout the State, which justices of the peace in a county cannot exercise at all.

Being in any county at the time, such justices may exercise the powers of § 8, chap. 222, Rev. Stat., and so in many other cases.

In the case at bar, the plaintiff, the principal defendant, and the trustee, all live in Strafford county; the writ was returnable before a justice of the peace throughout the State, at a place in Strafford county, and the justice went to that place and there entertained and tried the cause. He was authorized to do it, as we say, because any justice of the peace in and for Strafford county could do it.

If sections 17 and 18, chap. 222, comprise all the duties and powers of justices of the peace throughout the State, then they can never act judicially, but only ministerially, and only ministerially in one particular case; they are not therefore justices of the peace throughout the State, or in any part of the State, for justices of the peace can act both judicially and ministerially; and instead of being officers of greater power and dignity than those of justice of the peace and justice of the peace and of the quorum, they are far inferior to both.

Those sections do not prescribe the whole power of this class of justices any more than do the different statutes conferring power upon justices of the peace and quorum to administer official oaths, oaths to poor debtors, to approve jail bonds, &c. &c., prescribe the whole and sole duties of the latter class of justices.

The trustee is the party appellant. The principal defendant makes no objection to the jurisdiction of the magistrate. The motion of the trustee before the justice was that the action be dismissed. Can a trustee raise the question of

jurisdiction in any case as between the plaintiff and the principal defendant? The principal defendant was defaulted; there was a judgment against him. If the appeal of the trustee brings the whole action into the court of common pleas, the plaintiff is entitled to have his judgment affirmed against the principal defendant, notwithstanding the objection of the trustee. The motion, therefore, of the trustee in the court of common pleas, which is the same as that before the justice, to dismiss the action, should not prevail.

If there was an error in the manner of trying the liability of the trustee before the justice, the court of common pleas, to which the trustee has appealed, will correct it in their proceedings. The appeal entirely vacates the judgment before the justice, and the liability of the trustee may be fairly and correctly tried in the court of common pleas.

In the common pleas, the plaintiff moved the court to have the question of the liability of the trustee tried by the jury. This is the plaintiff's right. The appellate court will try the case precisely as if it were originally brought before them, and no trial or decision had been had or made. *Washburn* v. *Washburn*, 10 Pick. 374; *Lever* v. *Lever*, 8 Mass. Rep. 132; *Buckminster* v. *Perry*, 4 Mass. Rep. 593; *Boynton* v. *Dyer*, 18 Pick. 1, 4; *Campbell* v. *Howard*, 5 Mass. Rep. 376; *Murdock, appellant*, 7 Pick. 327; and ch. 208 § 7 Rev. Stat., gives the right to the plaintiff to elect how the question of the liability of the trustee shall be tried.

*Christie & Kingman*, for the trustee.

The appeal, though taken by the trustee alone, vacates the whole judgment of the justice. And if the justice had no jurisdiction, then the court of common pleas has none, and must dismiss the action for want thereof.

Justices of the peace throughout the State have no jurisdiction to hear, try or determine any plea or action in any

county. They are State, and not county officers, and have only the powers conferred upon them as such, by statute, in certain criminal cases, but have no civil jurisdiction whatever.

Justices of the peace have no civil jurisdiction, except what is expressly conferred by statute, and this is not to be enlarged by construction, but must be construed strictly. 4 Mass. Rep. 641; 13 Maine Rep. 136; 18 Maine Rep. 340.

Our only statute giving jurisdiction to justices of the peace to hear, try and determine pleas and actions, is in these words: "Every justice of the peace, within his county, may hear, try and determine all pleas," &c. Now this language clearly limits the jurisdiction of a justice of the peace, in civil cases, to his county, that is, to some one county, which is designated as his county. What is meant by his county? We submit that it means the county in which the justice resides and is domiciled at the time he is commissioned, and for which alone and in particular he is commissioned.

If a justice, thus commissioned, "remove from his county," that is, the county in which he was domiciled, and for which is commissioned, "he shall deposit his records and files with the clerk" of the county. Rev. Stat. ch. 175, § 17. Such removal extinguishes his authority, and his returning again will not restore or revive it. *Poulson v. Justices*, 2 Leigh. 743.

"All justices of the peace ought to be resident and dwelling in their counties." 1 Shaw's Justice 18; Dalton 9.

Where are the records of a justice of the peace throughout the State, if he may try causes in every county, to be kept? When he removes, or when he dies, where are they to be left? Suppose he has tried causes in every county in the State, where shall the records be kept while he lives? When he removes from one county to another, or when he dies, what is to be done with his records and files? The Revised Statutes (ch. 182, § 4) require that writs, issued by a

justice of the peace, " shall be directed " to the sheriff of his county. See also § 6 of the same chapter.

As the jurisdiction of a justice of the peace throughout the State extends over the whole State, and as in his commission no mention is made of any county, and as his powers and duties are specified in §§ 17 and 18 of ch. 22 of the Revised Statutes, we submit that no county can properly be designated as *his* county officially. And that, therefore, being in fact a State officer, he can have no civil jurisdiction as a justice of the peace in any county, or, indeed, any jurisdiction anywhere, save what is expressly conferred upon him by statute, as such justice throughout the State, which is an entirely different office from that of a county justice of the peace, and created and intended for other and different purposes.

But if this be not so, our next position is, that a justice of the peace throughout the State, if he can take jurisdiction, as such, at all, in civil cases, can only do so in the county where he resided and had his domicil at the time he was commissioned. For, in this case, the county in which such justice resides is the only county which can, in any sense, be said to be his county.

The liability of a trustee, by the statute, can only be tried upon his disclosure, or by a jury, upon evidence to be laid before them. A trustee, therefore, in a suit before a justice, can only be tried on his disclosure, as there can be no jury before a justice. A trial by jury is not applicable to, and is inconsistent with, process before a justice of the peace, and is, therefore, not allowed. Rev. Stat. ch. 208, § 39.

If the justice was bound to hear, try and determine the case upon the trustee's disclosure, the common pleas must try and decide the trustee's liability in the same manner as the justice should have done it, and can do it in no other manner, that is, upon no other kind of evidence than the justice was authorized to hear and decide it upon.

31

The authorities cited by the council for the plaintiff, in the last section of his argument, we think have no pertinence to any question in the case.

GILCHRIST, C. J.   The question of the civil jurisdiction of a justice of the peace throughout the State is, so far as we are aware, a new one, and has never been investigated in this court.   In order to determine it, it is necessary to inquire into the early legislative history of this State and Province, for the purpose of ascertaining what jurisdiction has heretofore been exercised by such officers, what has been the form of their commissions, and how it happened that justices of the peace were created with different jurisdictions and exercising different powers.

The form of the commission of the peace, in England, is given in Dalton's Justice 16, in Latin, and a translation in English, on page 18, as follows:

" Charles, &c.   To our well beloved and faithful Thomas Coventry, Knight, Lord Keeper of the Great Seal of England, James Ley, Treasurer of England, &c.   Greeting.

Know ye that we have assigned you, and every one of you, jointly and severally, our Justices, to keep our peace in the County of Cambridge, &c.

We have also assigned you, and every two or more of you, (whereof any of you the said A. B. C. &c. shall be one,) our justices to inquire by the oaths of good and lawful men," &c.

A similar commission is given in 3 Burns' Justice 5.   It is there said that the commission, in its present form, was adopted at the Michaelmas Term, 1590, by Sir *C. Wrey,* the lord chief justice of the K. B., and presented to the chancellor, who approved of it, and commanded it to be used, and that commissions were issued in this form at the time Burns' Justice was published.

It is inferable from these forms that, by the common law, a joint commission is issued to all the justices of a county,

and that no separate commission is issued to individual justices, and such appears to have been the case. Black. Com. 351. It follows, of course, that no justice had a commission authorizing him to exercise any jurisdiction beyond the limits of a single county. It is, also, to be inferred that in every commission of the peace for every county, the lord chancellor, lord treasurer, judges, sergeants, and many high officers of state were named, of course, so that it would seem that they were in fact justices of the peace throughout the realm. Yet this was always by virtue of a separate commission to each county, and this idea seems to be confirmed by 1 Black. Com. 351, above cited.

Until the year 1771, only a single commission was issued to justices of the peace for the whole province of New Hampshire, there being then no division of the territory into counties.

The research of Mr. Justice *Bell* has furnished us, from the files of the county of Rockingham, with a copy of one of the early commissions, which is, in substance, as follows:

[ " L. s. ] George, by the grace of God, of Great Britain, France and Ireland, King, Defender of the Faith, &c. To our right trusty and well beloved Shadrach Walton, George Jaffrey (and twenty-one other persons named therein.)

Greeting.

Know ye that we have assigned, and every one of you, jointly and severally, our justices to keep our peace in our province of New Hampshire, &c.

We have also assigned you, and every three or more of you, whereof any of you, the said Shadrach Walton, George Jaffrey, (and certain others selected from the whole number of justices,) shall be one, to inquire, by the oaths of good and lawful men, &c.

In testimony whereof we have caused the seal of our said province to be hereunto affixed.

Witness, Jonathan Belcher, Esq., our Captain General and Governor in Chief, &c., at Portsmouth, the third day of

December, in the fourth year of our reign, Anno que Domini, 1730.

J. BELCHER."

The form of this commission is similar to that given in 3 Burns' Justice 5.

Commissions were occasionally issued in a briefer form, but never, so far as has been observed, to individual justices. The commissions to justices of the peace seem to have regard, principally, to their office as justices of the court of sessions. The mode of appointment of judges of assize in England illustrates, in some degree, the question. Their authority is derived from the statute, Westm. 2 13 Edward I, ch. 30, which directs them to be assigned out of the king's sworn justices, associating to themselves one or two discreet knights of each county. 3 Black. Com. 59. It would seem, then, that certain persons were appointed sworn justices of the king, without reference to any county in particular.

When the province of New Hampshire was divided into counties, in the year 1771, a commission of the peace was issued for each county, which was the authority to the justices to hold a court of sessions for that county. As in England, the chancellor, treasurer, judges, &c., were named in the commission issued for each county; so in this province, the king's councillors, judges, &c., were named in the commission of the peace for each county. They were thus made justices of the peace for every county in the province.

The same system continued after the Revolution, but as the appointing power was then transferred from the governor alone to a larger body, it became necessary to designate those officers who were to be appointed in all the counties, and they then began to be spoken of as justices throughout the State.

Our impression is, that no commission was ever issued to any officer, as a justice throughout the State, until the court

of sessions was abolished, in the year 1793. As there was then no longer a court in which these persons were judges, the practice commenced of issuing a separate commission to each justice, and among others to justices throughout the State. Those commissions conferred precisely the same authority which justices throughout the State had before, by virtue of five general commissions; that is, the person was a justice in every county of the State, with the powers of a simple justice of the peace in each county, which powers, of course, he was competent to exercise with regard to matters arising in any county within its territorial limits, and not elsewhere.

The idea of residence as a qualification for judicial office, was not suggested until after the Revolution. Thus the first chief justice of the court of common pleas for the county of Hillsborough was Thornton of Londonderry, and Holland of Derry was first clerk of that court, both of whom resided in the county of Rockingham. The first judge and the first register of probate for the county of Grafton both resided in Portsmouth.

By §§ 17 and 18 of chapter 222 of the Revised Statutes, justices throughout the State are invested with certain criminal jurisdiction, but in relation to civil matters their powers and duties are not particularly pointed out. There seems, however, to be no reason why their records and files, pertaining to matters belonging to different counties, may not be kept where they severally reside; nor why their executors might not deposit their records with the clerk of the county to which such records belong. Nor does there seem to be any reason why their powers should be confined to the criminal matters specified in the statute. There is no necessity for the creation of such an officer merely that he might order offenders, in certain cases, to enter into recognizances before him. We think the more sensible view of their powers is, that they have all the civil jurisdiction in any county

that ordinary justices possess. We find nothing that conflicts with this position, and motives of convenience, in many cases, recommend it. They merely act throughout the State as the provincial justices acted throughout the province.

As to the other question in the case, we have no doubt that the question of the liability of the trustee is triable by the jury, *although no disclosure had been taken.* It is enacted, by § 7 of chapter 208 of the Revised Statutes, that a disclosure may be taken, or the question of the liability of the trustee may be tried by the jury, as the plaintiff may elect. The 28th section of this chapter points out the mode of proceeding, and is sufficiently comprehensive to include a case like the present. The 39th section provides that the provisions of the chapter, not restricted to the court of common pleas, " so far as they are applicable to, and not inconsistent with, process before a justice of the peace, shall be deemed to apply thereto." It is not inconsistent with such process that, after a case is carried by appeal to the court of common pleas, the question of the trustee's liability should be tried by the jury.

The case must, therefore, proceed as if it had been originally brought in the common pleas.

*Trustee's motion overruled.*